JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT B. KAPLAN (Bar No. 76950)
KEVIN W. CHEN (Bar No. 238791)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

Attorneys for Secured Creditor MECHANICS BANK

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In Re<br><br>ALMADEN ASSOCIATES, LLC,<br>a California limited liability company<br><br>Debtor. | CASE NO. 10-41903<br><br>R.S. NO. RBK-1<br><br>Chapter 11<br><br>**DECLARATION OF JOHN C. WELLS IN SUPPORT OF MOTION BY MECHANICS BANK FOR RELIEF FROM STAY**<br><br>Date: April 23, 2010<br>Time: 10:00 A.M.<br>Judge: The Honorable Edward D. Jellen<br>Courtroom: 215 |

I, John C. Wells, declare:

1. I am employed by Mechanics Bank, a California banking corporation ("<u>Bank</u>") in the capacity of Senior Vice President at its offices located in Richmond, California. If called upon to testify as to the facts set forth in this declaration, I could and would competently testify thereto since the facts set forth herein are personally known to me to be true, except as to those matters which I state on information and belief and as to those matters, I believe them to be true. My knowledge of the facts set forth in this declaration arises from the fact that I am one of the Senior Vice Presidents of Bank responsible for administration of the loan which is the subject of the above-entitled Chapter 11 case as set forth below in more detail.

2.      I am one of the custodians of the books, records, files and credit records of Bank as those books, records, files and credit records pertain to loans or extensions of credit made by Bank to Almaden Associates LLC, a California limited liability company ("Debtor"), and to Sidney Corrie, Jr. ("Corrie"). I have personally worked on said books, records, files and credit records and, as to the following facts, I know them to be true of my own knowledge or have gained knowledge of them from the business records of Bank, which records are maintained in the ordinary course of Bank's business.

3.      The records of Bank as they pertain to the loans and extensions of credit which are the subject matter of this action are kept in the regular course of Bank's business. The records are carefully prepared to reflect all acts, conditions and events at or near the time said acts, conditions or events occurred and the entries made therein are made by persons who have knowledge of the facts or have a business duty to maintain those records. Based on my personal knowledge and experience, I know that these records are accurate and trustworthy.

## GENERAL BACKGROUND

4.      In connection with the origination of the Bank's loan to the Debtor, the Debtor provided to the Bank copies of its governing documents, including the Restated Operating Agreement for Almaden Associates LLC, made as of January 1, 2004 (the "Debtor Operating Agreement". A true and correct copy of the Debtor Operating Agreement is attached hereto as Exhibit 1.

## EXECUTION OF NON-DEBTOR CORRIE SECURED LOAN DOCUMENTS

5.      For value received, on or about April 4, 2000, Corrie made, executed, and delivered to Bank that certain Promissory Note in the original principal sum of $7,400,000.00 (the "First Corrie Note"). A true and correct copy of the First Corrie Note is attached hereto as Exhibit 2.

6.      In order to secure repayment of the First Corrie Note and the performance of any and all obligations under the First Corrie Note, Corrie, as Trustor, made, executed and delivered to Macdonald Auxiliary Corporation, as Trustee for the benefit of Bank, as Beneficiary, that certain first priority Deed of Trust, dated April 4, 2000 (as modified, the "Dublin Deed of Trust") with respect to the real property commonly known as 7950 Dublin Blvd., Dublin, California and the

"Corrie Center" (the "Dublin Property"). The Dublin Property is a multi-tenant office building located in Dublin, California. The Dublin Deed of Trust was recorded in the Official Records of the Alameda County Recorder's Office on April 7, 2000, at Document No. 2000-104455. A true and correct copy of the Dublin Deed of Trust is attached hereto as Exhibit 3.

7. For value received, on or about February 23, 2007, Corrie made, executed, and delivered to Bank that certain Promissory Note in the original principal sum of $650,000.00 (the "Second Corrie Note" and together with the First Corrie Note, the "Corrie Notes"). A true and correct copy of the Second Corrie Note is attached hereto as Exhibit 4.

8. For value received, on or about February 23, 2007, Corrie made, executed, and delivered to Bank that certain Business Loan Agreement which, inter alia, set forth the terms on which Bank was willing to make the Loan (as defined therein) to Corrie as more specifically set forth therein (the "Corrie Loan Agreement"). A true and correct copy of the Corrie Loan Agreement is attached hereto as Exhibit 5.

9. In order to secure repayment of the Second Corrie Note and the performance of any and all obligations under the Second Corrie Note and the Corrie Loan Agreement, Corrie, as Trustor, executed that certain first priority Deed of Trust, dated August 18, 1998, to Macdonald Auxiliary Corporation, as Trustee for the benefit of Bank, as Beneficiary (as modified, the "San Ramon Deed of Trust") with respect to the real property commonly known as 19251 San Ramon Valley Blvd., San Ramon, California (the "San Ramon Property"). The San Ramon Property is comprised of land and two homes located on a San Ramon hilltop. The San Ramon Deed of Trust was previously recorded in the Contra Costa County Recorder's Office on August 21, 1998, as Document No. 98-0199906-00. A true and correct copy of the San Ramon Deed of Trust is attached hereto as Exhibit 6.

## EXECUTION OF DEBTOR SECURED LOAN DOCUMENTS

10. For value received, on or about September 5, 2006, Debtor made, executed, and delivered to Bank that certain Promissory Note in the original principal sum of $990,600.18 (the "Debtor Note"). A true and correct copy of the Debtor Note is attached hereto as Exhibit 7.

///

11. For value received, on or about September 5, 2006, Debtor made, executed, and delivered to Bank that certain Business Loan Agreement which, <u>inter alia</u>, set forth the terms on which Bank was willing to make the Loan (as defined therein) to Debtor as more specifically set forth therein (the "<u>Debtor Loan Agreement</u>"). A true and correct copy of the Debtor Loan Agreement is attached hereto as <u>Exhibit 8</u>.

12. In order to secure repayment of all outstanding Indebtedness (as defined in the Debtor Loan Agreement) owed by Debtor to Bank and the performance of any and all obligations under the Debtor Note and the Debtor Loan Agreement, Debtor, as Trustor, made, executed and delivered to MacDonald Auxiliary Corporation, as Trustee for the benefit of Bank, as Beneficiary, that certain first priority Deed of Trust, dated August 22, 2003 (as modified, the "<u>Bollinger Deed of Trust</u>") with respect to the real property commonly known as 18120 Bollinger Canyon Road, San Ramon, California (the "<u>Bollinger Property</u>"). The Bollinger Property, often referred to as the former Nike Missile site, consists of 22.7 acres zoned as industrial property with ten buildings used for a mixture of industrial and commercial uses. The Bollinger Deed of Trust was recorded in the Official Records of the Contra Costa County Recorder's Office on September 25, 2003, at series 480493. A true and correct copy of the Bollinger Deed of Trust is attached hereto as <u>Exhibit 9</u>.

13. In order to further secure repayment of all outstanding Indebtedness (as defined therein) owed by Debtor to Bank and the performance of any and all obligations including the Debtor Note and the Debtor Loan Agreement, Corrie, as guarantor, made, executed and delivered to Bank, that certain Commercial Guaranty (the "<u>Guaranty</u>"). A true and correct copy of the Guaranty is attached hereto as <u>Exhibit 10</u>.

## LOAN MODIFICATIONS

14. Thereafter, on or about July 20, 2009, Debtor, Corrie, and Bank executed that certain Loan Modification Agreement (Mechanics Bank Loan No. 8100047996) pursuant to which, <u>inter alia</u>, Debtor agreed to (a) make monthly principal and interest payments, (b) pay all Deferred Interest, (c) pay all Delinquent Property Taxes, and as more specifically set forth therein ("<u>Debtor Loan Mod</u>"). A true and correct copy of the Debtor Loan Mod is attached hereto as <u>Exhibit 11</u>.

///

PRINTED ON RECYCLED PAPER

15. Concurrently with the execution of the Debtor Loan Mod, Corrie and Bank executed that certain Loan Modification Agreement (Mechanics Bank Loan No. 8100041602), entered into as of July 20, 2009, and that certain Loan Modification Agreement (Mechanics Bank Loan No. 10047387), entered into as of July 20, 2009, pursuant to which Corrie agreed to pledge to Bank as additional collateral a first priority deed of trust with respect to real property commonly known as 1609 Lawrence Road, Danville, California (the "Lawrence Property") to secure repayment of all obligations owed by Corrie to Bank pursuant to the Corrie Notes and the Corrie Loan Agreement, and agreed to cure its defaults under the loans evidenced by the Corrie Notes including payment of delinquent property taxes on the Dublin Property and the San Ramon Property, as more specifically set forth therein (the "First Corrie Loan Mod" and the "Second Corrie Loan Mod" respectively, each a "Corrie Loan Mod" and collectively, the "Corrie Loan Mods" and together with the Debtor Loan Mod, each a "Loan Mod" and collectively, the "Loan Mods"). The Lawrence Property has a house and barn on an otherwise vacant 3-acre lot. True and correct copies of the First Corrie Loan Mod and the Second Corrie Loan Mod are attached hereto as Exhibit 12 and Exhibit 13 respectively.

16. In accordance with the Corrie Loan Mods, to secure repayment of all outstanding indebtedness owed by Corrie to Bank and any and all obligations under the Corrie Notes and the Corrie Loan Agreement, Corrie, as Trustor, made executed and delivered to MacDonald Auxiliary Corporation, as Trustee, for the benefit of Bank, as Beneficiary, that certain first priority Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated July 20, 2009, with respect to the Lawrence Property (as modified, the "Lawrence Deed of Trust"). The Lawrence Deed of Trust was recorded in the Official Records of the Contra Costa County Recorder's Office on July 31, 2009, as Document No. 2009-0185472-00. A true and correct copy of the Lawrence Deed of Trust is attached hereto as Exhibit 14.

17. The Corrie Notes, the Corrie Loan Agreement, the Dublin Deed of Trust, the San Ramon Deed of Trust, and the Lawrence Deed of Trust are hereinafter collectively referred to as the "Corrie Secured Loan Documents." The Debtor Note, the Debtor Loan Agreement, the Guaranty, and the Bollinger Deed of Trust are hereinafter collectively referred to as the "Debtor Secured Loan

Documents." All capitalized terms not otherwise defined in this Declaration shall have the meanings ascribed to them in the Corrie Secured Loan Documents or Debtor Secured Loan Documents, respectively.

**DEFAULTS UNDER THE NON-DEBTOR CORRIE SECURED LOAN DOCUMENTS**

18. Various Events of Default have occurred under the terms of the Corrie Secured Loan Documents as a result of, <u>inter alia</u>, (i) the failure of Corrie to make monthly principal and interest payments due on October 10, 2009, November 10, 2009, December 10, 2009, January 10, 2010, February 10, 2010, and March 10, 2010, pursuant to Section 4(b) of each Corrie Loan Mod, (ii) the failure of Corrie to make the payment due on or before September 30, 2009, pursuant to Section 4(d)(i) of each Corrie Loan Mod, (iii) the failure of Corrie to make the payment on or before September 30, 2009, pursuant to Section 4(d)(ii) of each Corrie Loan Mod, and (iv) Section 8(ii) of each Corrie Loan Mod. These pre-prepetition payments total $458,285.48 under the First Corrie Note and $33,073.83 under the Second Corrie Note, for a cumulative total of $491,359.31. An additional scheduled payment post-petition has also not been paid of $13,955.58 under the First Corrie Note and $2,398.80 under the Second Corrie Note, for an additional cumulative total of $16,354.38.

19. To date, neither Corrie nor Debtor has not made any payments to Bank on account of the Indebtedness under the Corrie Secured Loan Documents since the date of this Bankruptcy Case on February 22, 2010.

20. There now remains due, owing and payable to Bank pursuant to the Corrie Secured Loan Documents, as of March 15, 2010, the principal sum of $6,108,380.22 plus accrued default interest of $544,591.92 under the First Corrie Note and the principal sum of $650,000.00 plus accrued default interest of $62,006.92 under the Second Corrie Note, plus interest thereon accruing from and after March 15, 2010, including interest at the default rate, plus all fees, costs and other amounts, including attorneys' fees and costs, all of which continue to accrue.

**DEFAULTS UNDER THE DEBTOR SECURED LOAN DOCUMENTS**

21. Various Events of Default have occurred under the terms of the Debtor Secured Loan Documents as a result of, <u>inter alia</u>, (i) the failure of Debtor to make monthly principal and interest

payments due on October 10, 2009, November 10, 2009, December 10, 2009, January 10, 2010, February 10, 2010, and March 10, 2010, pursuant to Section 4(b) of the Debtor Loan Mod, (ii) the failure of Debtor to make the payment due on or before September 30, 2009, pursuant to Section 4(c)(i) of the Debtor Loan Mod, (iii) the failure of Debtor to make the payment on or before September 30, 2009, pursuant to Section 4(c)(ii) of the Debtor Loan Mod, and (iv) Section 7(ii) of the Debtor Loan Mod.

22. To date, the Debtor has not made any payments to Bank on account of the Indebtedness under the Debtor Secured Loan Documents since the date of this Bankruptcy Case on February 22, 2010.

23. There now remains due, owing and payable to Bank pursuant to the Debtor Secured Loan Documents, as of March 15, 2010, the principal sum of $950,533.55 plus accrued interest of $75,233.17 under the Debtor Note, plus interest thereon accruing from and after March 15, 2010, including interest at the default rate, plus all fees, costs and other amounts, including attorneys' fees and costs, all of which continue to accrue.

**THE BANK'S COMMENCEMENT OF NON-JUDICIAL FORECLOSURE PROCEEDINGS AND CORRIE'S TRANSFER OF THE DUBLIN PROPERTY, THE SAN RAMON PROPERTY, AND THE LAWRENCE PROPERTY**

24. As a result of the Defaults which occurred under the Corrie Secured Loan Documents, the Bank initiated non-judicial foreclosure proceedings pursuant to the Dublin Deed of Trust, the San Ramon Deed of Trust, and the Lawrence Deed of Trust, as more specifically set forth in Exhibits A, B, C, G, H and I attached to the Bank's accompanying Request for Judicial Notice ("RJN"). Pursuant to those non-judicial foreclosure proceedings, trustee's sales were scheduled pursuant to the Dublin Deed of Trust, the San Ramon Deed of Trust and the Lawrence Deed of Trust for February 23, 2010.

25. As is more specifically set forth in the RJN, on February 22, 2010, one day before the trustee's sales were scheduled pursuant to the Dublin Deed of Trust, the San Ramon Deed of Trust and the Lawrence Deed of Trust, Corrie executed Grant Deeds transferring record title of the San Ramon Property, the Dublin Property and the Lawrence Property to the Debtor. The Bank was

1 neither aware of nor did it consent to Corrie's transfer of record title of the Dublin Property, the San
2 Ramon Property and the Lawrence Property from Corrie to the Debtor.
3 ///
4 ///
5 ///
6 ///
7 ///
8 ///
9 ///
10 ///
11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1 | I declare under penalty of perjury under the laws of the United States of America that
2 | the foregoing is true and correct.

DATED: March 31, 2010

/s/ John C. Wells
JOHN C. WELLS, Declarant