1  JOEL K. BELWAY [60556]
   THE LAW OFFICE OF JOEL K. BELWAY
2  Professional Corporation
   235 Montgomery St., Suite 668
3  San Francisco, CA 94104
   Telephone:  (415) 788-1702
4  Facsimile:  (415) 788-1517

5  *Attorney for Debtor and*
   *Debtor in Possession*
6  *ALMADEN ASSOCIATES, LLC*

7

8

9                  UNITED STATES BANKRUPTCY COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                      OAKLAND DIVISION

12
   | In re | Case No. 10-41903 |
13 | | |
14 | | Chapter 11 |
   | ALMADEN ASSOCIATES, LLC, | |
15 | | |
   | Federal ID No. 94-3266900 | **MOTION FOR USE OF CASH** |
16 | | **COLLATERAL** |
17 | | |
18 | Debtor. | |

19

20

21

22

23      TO 1st UNITED BANK, BLOCK FAMILY LIMITED PARTNERSHIP,

24  NORTHERN TRUST BANK, THE MECHANICS BANK, AT&T, CITY OF FT.

25  LAUDERDALE MUNICIPAL SERVICE, EAST BAY MUNICIPAL UTILITIES

26  DISTRICT, FPL, PG&E AND OTHER CREDITORS AND PARTIES IN INTEREST:

27      The Motion of debtor, Almaden Associates, LLC ("Debtor"),

28  respectfully represents:

                          1          MOTION FOR USE OF CASH COLLATERAL

Case: 10-41903   Doc# 34   Filed: 04/05/10   Entered: 04/05/10 15:19:15   Page 1 of 23

1. Debtor filed a voluntary petition commencing the above-captioned case under Chapter 11 of the Bankruptcy Code on February 22, 2010.

2. Debtor is the debtor and debtor-in-possession in this case. The Debtor is engaged in the business of owning and operating investment real property. The Debtor's assets include income property in the State of California and in the State of Florida. Three of the Debtor's seven properties generate rental income. This rental income is arguably "cash collateral", as the term is defined by Bankruptcy Code Section 363(c), in favor of various different lenders on the various properties.

3. A summary of the various properties and identification of the first position lenders on each is attached to this Motion and labeled Exhibit 1.

4. All of the properties require payment of operating expenses to preserve their value. Attached as Exhibit 2 to this Motion is Debtor's operating budget for the use of cash collateral requested by this Motion. The budget is set forth on an annual basis.

5. Unless the Debtor is permitted to use the cash collateral of the various secured creditors, it will not have sufficient funds to pay essential post-petition operating, maintenance and utility bills and the subject properties will significantly erode in value. Attached as Exhibit 3 is a list, by name and amount, of bills for which Debtor requests permission to pay immediately.

6. Attached is a draft stipulation, Exhibit 4, that the Debtor intends to use as a template for its lenders. The Debtor

Case: 10-41903   Doc# 34   Filed: 04/05/10   Entered: 04/05/10 15:19:15   Page 2 of 23

hopes to present such a stipulation for the Court's consideration at the time of the final hearing of this Motion.

7.   In the event that the Debtor and his secured creditors are unable to come to terms, the Debtor requests authority to use the subject cash collateral in accordance with the amounts set forth in Exhibit 2, with authority to disburse 1/12 of the annual budget on a monthly basis, with a 20% variance for each line item and a 10% variance overall, through September 30, 2010, or the confirmation of a Plan of Reorganization, whichever occurs first.

8.   As a condition to the use of cash collateral of the various secured creditors, whether by stipulation or order, the secured creditors should each be granted a replacement lien on the post petition property of the Debtor of the same nature and to the same extent and priority as their respective existing liens as adequate protection.

9.   The undersigned Certifying Professional has read the above motion and the draft stipulation attached as Exhibit 4.  To the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the motion/stipulation are in conformity with the Court's Guidelines for Cash Collateral and Financing Motions and Stipulations.  I understand and have advised the debtor in possession that the Court may grant appropriate relief under Fed. R. Bankr. P. 9024 if the Court determines that a material element of the motion/stipulation was not adequately disclosed in the introductory statement of this Motion.

WHEREFORE, based upon the foregoing and the Declaration of Peter Klein filed herewith, Debtor prays that the Court enter

3                    MOTION FOR USE OF CASH COLLATERAL

1    this Oder authorizing it to use the cash collateral of the

2    secured creditors noted above through September 30, 2010, or the

3    confirmation of a Chapter 11 Plan, whichever occurs first, that

4    it grant the secured creditors in question a replacement lien on

5    the post petition property of the Debtor of the same nature and

6    to the same extent and priority as its existing lien as adequate

7    protection, and for such other and further relief as the Court

8    deems proper.

9

10

11

12    Dated: April 5, 2010        THE LAW OFFICE OF JOEL K. BELWAY

13                                Professional Corporation

14                                /s/ Joel K. Belway

15                                JOEL K. BELWAY
                                         Attorney for Debtor

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 10-41903    Doc# 34    Filed: 04/05/10    Entered: 04/05/10 15:19:15    Page 4 of 23

# EXHIBIT 1

| PROPERTY | LENDER |
|---|---|
| 7950 Dublin Boulevard<br>Dublin, CA | The Mechanics Bank<br>Richmond, CA |
| 18120 Bollinger Canyon Road<br>San Ramon, CA | The Mechanics Bank<br>Richmond, CA |
| 1609 Lawrence Road<br>Danville, CA | The Mechanics Bank<br>Richmond, CA |
| 147 Acres<br>W. San Ramon, CA | The Mechanics Bank<br>Richmond, CA |
| 29+ Acres, Finley Road<br>Danville, CA | Bloch Family Limited Partnership<br>Danville, CA |
| 1611 SE 8th Street<br>Ft. Lauderdale, FL | Northern Trust Bank<br>Ft. Lauderdale, FL |
| 1625 SE 11th Street<br>Ft. Lauderdale, FL | 1st United Bank<br>Ft. Lauderdale, FL |

# EXHIBIT 2

# 2010 Almaden Associates, LLC
## Property Operating Budgets

| | Total | 7950 Dublin Blvd. Dublin, CA | 18120 Bollinger Canyon Rd., San Ramon, CA | Westside Acreage | 1609 Lawrence Rd. Danville, CA | 29 Acres Finley Rd. Danville, CA | 1611 SE 8th St. Ft. Lauderdale, FL | 1625 SE 11th St. Ft. Lauderdale, FL |
|---|---|---|---|---|---|---|---|---|
| Rents: | 1,140,000 | 600,000 | 480,000 | - | - | - | 60,000 | - |
| Expense Reimbursement: | 4,000 | - | 4,000 | - | - | - | - | - |
| | | | | | | | | |
| Expenses: | | | | | | | | |
| Management Fees | 138,000 | 102,000 | 36,000 | - | - | - | 2,500 | 19,220 |
| Insurance | 49,402 | 12,000 | 12,000 | 2,000 | 1,657 | 25 | - | 6,000 |
| PG&E | 163,000 | 112,000 | 45,000 | - | - | - | - | 6,000 |
| Water/Sewer/Garbage | 24,400 | 14,800 | 8,000 | - | - | - | - | 1,600 |
| Janitorial-Maintenance/Supplies | 46,000 | 46,000 | - | - | - | - | - | - |
| Elevators-Maintenance | 6,000 | 6,000 | - | - | - | - | - | - |
| Elevators-Telephones | 900 | 900 | - | - | - | - | - | - |
| HVAC-Maintenance | 6,000 | 6,000 | - | - | - | - | - | - |
| HVAC-Other Repairs | 12,000 | 12,000 | - | - | - | - | - | - |
| HVAC-Modem Line | 300 | 300 | - | - | - | - | - | - |
| Telephone | 1,800 | - | 1,800 | - | - | - | - | - |
| Landscape Maintenance | 13,800 | 7,200 | - | - | - | - | 3,600 | 3,000 |
| Plant Service | 2,300 | 2,300 | - | - | - | - | - | - |
| Pool Service | 2,300 | - | - | - | - | - | 1,200 | 1,100 |
| Window Cleaning | 2,800 | 2,800 | - | - | - | - | - | - |
| Alarms | 5,300 | 4,000 | - | - | - | - | - | 1,300 |
| Fire Extinguishers/Sprinklers | 1,100 | - | 1,100 | - | - | - | - | - |
| Pest Control | 960 | 960 | - | - | - | - | - | - |
| Misc. Repairs/Maint. | 54,600 | 24,000 | 30,000 | - | - | - | 600 | - |
| Keys | 1,200 | 1,200 | - | - | - | - | - | - |
| Signs/Marketing | 9,600 | 6,000 | 3,600 | - | - | - | - | - |
| Leasing Commission | 3,000 | - | - | - | - | - | 3,000 | - |
| Caretaker Expense | 3,600 | - | 3,600 | - | - | - | - | - |
| Miscellaneous | 7,500 | 3,000 | 500 | 500 | 1,000 | 500 | 1,000 | 1,000 |
| | | | | | | | | |
| Total Expenses | 555,862 | 363,460 | 141,600 | 2,500 | 2,657 | 525 | 11,900 | 33,220 |
| | | | | | | | | |
| Net | 588,138 | 236,540 | 342,400 | (2,500) | (2,657) | (525) | 48,100 | (33,220) |
| | | | | | | | | |
| Current Annual Property Taxes (not reflected above) | 246,023 | 62,453 | 48,143 | 20,375 | 4,754 | 11,843 | 28,132 | 70,323 |

# EXHIBIT 3

**Almaden Associates, LLC**
**Bills on Hand to pay 3/31/10**

**1609 Lawrence Rd.**

| Private Client Group | 363.75 | Insurance |
|---|---|---|

**18120 Bollinger Canyon Rd., San Ramon (Industrial Park)**

| AT&T | 33.35 | Utilities/Water Tank Line | 3727 |
|---|---|---|---|
| AT&T | 29.58 | Utilities/Fax Line | 1956 |
| AT&T | 58.11 | Utilities/Alarm Line | 7791 |
| AT&T | 29.73 | Utilities/Pump House Line | 1512 |
| Bay Alarm | 922.50 | Security Alarm | |
| Contra Costa County | 110.30 | Admin Fees | |
| Chase Card Services | 596.24 | Repairs/Maintenance | |
| EBMUD | 880.52 | Utilities/Water | |
| FastSigns | 82.31 | Repairs/Maintenance | |
| Home Depot | 102.41 | Repairs/Maintenance | |
| Livermore Dublin Disposal | 210.18 | Utilities/Garbage | |
| PG&E | 7,468.79 | Utilities/Electricity (2 Months) | |
| Premium Financing Spec. | 1,641.44 | Insurance Pmt 4 & 5 (2 Months) | |
| | 12,165.46 | | |

**Florida**

**1611 SE 8th St. (Rental)**

| Home Depot | 27.76 | Repairs/Maintenance |
|---|---|---|
| Pool Perfection | 150.00 | Pool Service (2 Months) |
| Suncoast Lawn Service | 195.00 | Landscape Maintenance |

**1625 SE 11th St. (For Sale)**

| AT&T | 108.95 | Utilities/Alarm Line (2 Months) |
|---|---|---|
| Bad Dog Bugs, LLC | 75.00 | Pest Control |
| City of Ft. Lauderdale | 203.18 | Utilities/Water (2 Months) |
| FPL | 351.26 | Utilities/Electricity (2 Months) |
| Home Depot | 17.95 | Repairs/Maintenance |
| Pool Perfection | 150.00 | Pool Service (2 Months) |
| Private Client Group | 4,496.25 | Insurance |
| Security Networks | 74.10 | Security Alarm (2 Months) |
| Suncoast Lawn Service | 150.00 | Landscape Maintenance |
| | 5,999.45 | |

**7950 Dublin Blvd., Dublin (Multi-Tenant Office Building)**

| Amador Valley Industries | 524.05 | Garbage Service | |
|---|---|---|---|
| AT&T | 58.11 | Utilities/Alarm Line | 9360 |
| AT&T | 34.31 | Utilities/Elevator Line | 9269 |
| AT&T | 32.96 | Utilities/Elevator Line | 0577 |
| AT&T | 29.73 | Utilities/Alarm Line | 1452 |
| AT&T | 29.73 | Utilities/HVAC Modem Line | 8053 |
| AT&T | 28.20 | Utilities/Alarm Line | 1959 |
| Bay Lock & Key | 447.01 | Locksmith Services | |
| Carrier Corp. | 2,346.93 | HVAC Compressor replacement | |
| Carrier Corp. | 938.00 | HVAC Maintenance | |
| Carrier Corp. | 214.50 | HVAC Service Call | |
| Chase Card Services | 188.95 | Advertising | |
| CoStar Showcase | 90.00 | Marketing/Advertising | |
| FastSigns | 335.84 | Signage-Tenant Suites | |
| FastSigns | 150.36 | Signage-Tenant Suites | |
| Home Depot | 842.14 | Repairs/Maintenance | |
| Killroy Pest Control | 160.00 | Pest Control (2 Months) | |
| Mother Nature Hang-ups | 370.00 | Plant Maintenance (2 Months) | |
| National Tenant Network | 60.00 | New Tenant Credit Reports | |
| PG&E | 7,873.34 | Utilities/Electricity | |
| Town & Country | 5,309.94 | Janitorial Service (2 Months) | |
| Town & Country | 1,689.63 | Janitorial Supplies (3 Invoices-Bonnie Holding) | |
| Villasenor Landscape | 1,200.00 | Landscape Maintenance (2 Months) | |
| | 22,429.68 | | |

# EXHIBIT 4

## AGREEMENT FOR USE OF CASH COLLATERAL

This Agreement for Use of Cash Collateral is made as of _____, 2010, between Almaden Associates, LLC, Debtor and Debtor-in-possession, and _____, Lender.


## I.    PRELIMINARY STATEMENTS

### A.    Defined Terms

1.    "Agreement means this Agreement for Use of Cash Collateral, as modified and supplemented from time to time, including all exhibits, attachments and schedules hereto.

2.    "Bankruptcy Code" means Title 11 of the United States Code, as in effect from time to time and applicable to the Chapter 11 case.

3.    "Bankruptcy Court" means the U.S. Bankruptcy Court, including provisions incorporated therein from the Local Rules of the District Court for the Northern District of California, as in effect from time to time and applicable to the Chapter 11 case.

4.    "BLRs" means the Local Rules of the Bankruptcy Court, including provisions incorporated therein from the Local Rules of the District Court for the Northern District of California, as in effect from time to time and applicable to the Chapter 11 Case.

5.    "Budget" means the Interim Budget and/or the Ongoing Budget, or both, as the context may require.

6.                          "Chapter 11 Case" means the Case No. 10-41903 commenced by the Debtor in the U.S. Bankruptcy Court for the Northern District of California under Chapter 11 of the Bankruptcy Code.

7.    "Chapter 11 Professional Fees" means any fees and expenses of professionals employed by the Debtor that are authorized and allowed by the Bankruptcy Court.

8.    "Collateral means the property of the Debtor that secures the Existing Loan and/or the Secured Obligation, as applicable; "Prepetition Collateral" means that the Collateral that existed on the Petition Date pursuant to the Loan

1

Documents; "Postpetition Like-kind Collateral" means property
acquired by the Debtor after the Petition Date of the same type
and description as the Prepetition Collateral, but excluding
claims for relief arising under the Bankruptcy Code (including
claims arising under §§506(c), 544, 545, 547, 548, and 549
thereof). "Additional Collateral means property of the Debtor
that is not Prepetition Collateral or Postpetition Like-kind
Collateral.

    9.   "Committee" means a committee of creditors
appointed in the Chapter 11 Case.

    10.  "Debtor" means Almaden Associates, LLC.

    11.  "Existing Loan" means the obligations on which
the Debtor is obligated to the Lender.

    12.  "Interim Budget" means a budget in the form
attached to the Debtor's Motion for Use of Cash Collateral as
Exhibit 2, projected forward through _____ and/or such other
budget(s) approved by the Lender in writing that identifies the
uses to be made of the Cash Collateral pending issuance of the
Final Order.

    13.  "Lender" means_____

    14.  "Loan Documents" means the agreements between the
Lender (and/or its predecessors in interest) and the Debtor
(and/or its predecessors in interest) defining the rights and
obligations of the parties in connection with the Existing Loan.

    15.  "Motion" means the motion to be filed by the
Debtor under §363 of the Bankruptcy Code seeking approval of
this Agreement and authority to grant the rights afforded to the
Lender hereunder and perform the obligations set forth herein.

    16.  "Ongoing Budget" means a budget in the form
attached to the Debtor's Motion for Use of Cash Collateral as
Exhibit 2, projected forward through _____ and/or such other
budget(s) approved by the Lender in writing that identifies the
uses to be made of the Cash Collateral upon and after issuance
of the Final Order.

    17.  "Orders" means, collectively, the Interim
Order(s) and the Final Order; "Interim Order(s)" means one or
more orders by the Bankruptcy Court authorizing the Debtor to
use the Cash Collateral on an interim basis in order to avoid
immediate and irreparable injury; "Final Order" means the order
by the Bankruptcy Court finally authorizing the Debtor to use
the Cash Collateral in accordance with this Agreement.

2

18.  "Petition Date" means the date the Chapter 11 Case is commenced.

19.  "Replacement Lien" means a security interest in and lien upon all Postpetition Like-kind Collateral and all Additional Collateral.

20.  "Rules" means the Federal Rules of Bankruptcy Procedure, as in effect from time to time and applicable to the Chapter 11 Case.

21.  "Secured Obligation" means any decrease resulting from the use of Cash Collateral by the Debtor in the Lender's interest in the Prepetition Collateral.

## B.  **Undefined Terms**

Capitalized terms not defined in this Agreement and defined in the Bankruptcy Code shall have the meanings set forth in the Bankruptcy Code.

## C.  **Rules of Construction**

1.  **Usage.**  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation."  The word "will" shall be construed to have the same meaning and effect as the word "shall."  Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein), (b) any reference herein to any Person shall be construed to include such Person's successors and assigns, (c) the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Sections, Schedules, and Exhibits to, this Agreement, and (e) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all real property, tangible and intangible assets and

3

properties, including cash, securities, accounts and contract rights, and interests in any of the foregoing.

     D.    Recitals

     1.    The Debtor has filed the Chapter 11 Case.

     2.    The Lender is the holder of a deed of trust and "assignment of rents" in certain real property commonly known as

_____.

Debtor acknowledges that post-petition rental income arising from the subject real property constitute "Cash Collateral" as the term is defined in Bankruptcy Code Section 363. The parties acknowledge, however, that nothing in this Agreement and/or any Orders entered by the Bankruptcy Court approving this Agreement or the Debtor's use of Cash Collateral in intended to constitute a finding of fact or admission that binds the Lender, the Debtor or its estate, or any party in interest in the Chapter 11 Case with respect to the validity, perfection or amount of the Lender's lien or claim or the relative priorities of the Lender's lien and liens held by persons who are not parties to this Agreement.

     3.    The Lender is willing to permit the Debtor to use the Lender's Cash Collateral provided that the Bankruptcy Court approves the terms of this Agreement and the Debtor performs its obligations hereunder.

## II.  **AGREEMENT**

In consideration of the foregoing and the mutual promises of the parties hereto, the Debtor and the Lender hereby agree as follows:

### A.  **Use of Cash Collateral**

     1.    Upon issuance of an Interim Order, the Debtor shall be authorized to use Cash Collateral in the ordinary course of business for the purposes and in the amounts (subject to a 20% variance in categories that are not fixed expenses) set forth in the Interim Budget through the conclusion of a final hearing on the motion, but only for uses that will avoid immediate and irreparable injury and only for an aggregate amount that does not exceed the aggregate amount set forth in

4

the Interim Budget or such other amount as is authorized by the Interim Order and approved by the Lender in writing.

2.    Upon issuance of a Final Order, the Debtor shall be authorized to use Cash Collateral in the ordinary course of business for the purposes and in the amounts (subject to a 20% variance in categories that are not fixed expenses) set forth in the Ongoing Budget through September 30, 2010, or such later date as is approved by the Lender in writing, or authorized by Court Order.  Without limiting the generality of the foregoing, the Debtor shall be authorized to use Cash Collateral beyond September 30, 2010, with only the written consent of the Lender to such further use and without further order of the Bankruptcy Court; for this purpose, the Lender reserves the right to require its approval of an extension of any previously approved Ongoing Budget as a condition to such consent.

**B.    Adequate Protection**

1.    **Replacement Lien.**  As adequate protection for the Secured Obligation, the Lender shall have and the Debtor hereby grants to the Lender the Replacement Lien.  The Replacement Lien on Postpetition Like-kind Collateral shall have the same priority, validity and extent as the Lender's lien on Prepetition Collateral The Replacement Lien on Additional Collateral shall be valid only to the extent that Lender's lien on Prepetition Collateral is valid and enforceable and not subject to avoidance and shall only be valid to the extent that the Replacement Lien on the Postpetition Like-kind Collateral is insufficient to provide adequate protection to the Lender.

2.    **Priority of Replacement Lien.**  The Replacement Lien shall have priority over other liens and claims to the extent set forth in this section:

(a)   The Replacement Lien on Postpetition Like Kind Collateral shall be subordinate to the compensation and expense reimbursement (other than for professional fees and expenses) allowed to a trustee in any successor Chapter 7 case; and

(b)   The Replacement Lien on Additional Collataeral shall be subordinate to (i) any valid and unavoidable liens on or security interests in such Additional

5

Collateral in existence on the Petition Date, (ii) the compensation and expense reimbursement (other than for professional fees and expenses) allowed to a trustee in any successor Chapter 7 case, (iii) fees payable to the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6), and (iv) payment of the Chapter 11 Professional Fees.

Notwithstanding such subordination, the Replacement Lien shall encumber all property of the Debtor available for full repayment of its obligations to the Lender under the Loan Documents after payment of the claims described in this section, and all proceeds from disposition of any such property shall be applied to satisfaction of the Debtor's obligations under the Loan Documents prior to any distributions to any party other than the beneficiaries of the foregoing subordination.

3.  **Administrative Priority.**  In addition to the Replacement Lien, the Secured Obligation shall constitute an administrative expense allowable under §503(b) of the Bankruptcy Code with a priority over all other administrative expenses of the kind specified in §§503(b), 507(a), and 507(b) of the Bankruptcy Code, save and except for: (a) the fees of a trustee appointed in any successor Chapter 7 case (other than for professional fees and expenses), (b) fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) in the Chapter 11 Case, and (c) the Chapter 11 Professional Fees.

4.  **Automatic Perfection.**  The Replacement Lien granted to the Lender pursuant to this Agreement shall be perfected by operation of law upon entry of the Orders by the Bankruptcy Court.  The Lender shall not be required to file or record any financing statements, mortgages, or other documents in any jurisdiction or to take any other action in order to validate or perfect the Replacement Lien granted hereunder. Such Orders shall be deemed sufficient and conclusive evidence of the security interests and liens granted hereunder.  If the Lender shall, in its sole discretion, choose to file financing statements or record mortgages or other documents, or otherwise confirm perfection of such security interests and liens, the Lender is hereby authorized to effect such filings and recordations, and all such financing statements, mortgages, or

6

similar documents shall be deemed to have been filed, recorded, or made on the date of entry of the Orders.

       5.  **Segregation of Funds**.  The Debtor shall maintain all of Lender's Cash Collateral in an account segregated from the collateral of his other secured creditors, except such secured creditors who are junior or senior in priority to Lender on the same property.

       6.  **Further Adequate Protection; Monthly Payments.** To provide further adequate protection to the Lender for the Secured Obligation, the Debtor shall pay or cause to be paid $_____ to the Lender on the first day of each month commencing with the first day of the first month commencing after the Petition Date.

## C. <u>Financial Reporting</u>

       1.  Concurrently with filing its Monthly Operating Report (as required by the BLRs) with the Bankruptcy Court for each month that ends during the Term of this Agreement, the Debtor shall deliver a copy to the Lender's counsel.

       2.  Concurrently with delivery of the Monthly Operating Report for each month, the Debtor shall also deliver to the Lender and its counsel a report comparing the expenditures during the month covered therby with the Budget for that month.

## D. <u>Events of Default</u>

     Each of the following shall constitute an "Event of Default" under this Agreement:

       1.  Appointment of an interim trustee or trustee in the Chapter 11 Case;

       2.  Dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case to one under Chapter 7 of the Bankruptcy Code;

7

3.  Commencement against the Lender of any lawsuit, adversary proceedings, contested matter, or other proceeding which asserts any cause of action or claim that seeks to (i) reduce, limit, setoff, counterclaim, or subordinate the Debtor's obligations to the Lender or (ii) challenge or affect the validity, extent, or priority of the Lender's security interest in or liens on the Prepetition Collateral;

4.  The Debtor shall bring a motion before the Bankruptcy Court, or acquiesce in a motion by a third party before the Bankruptcy Court, to: (i) obtain additional financing or incur indebtedness that is secured by a lien that is equal or prior to any one or more of the liens or security interests granted to the Lender or entitled to priority administrative status that is equal or superior that that granted to the Lender, (ii) use Cash Collateral for purposes other than as authorized by this Agreement without the written consent of the Lender, (iii) surcharge the Lender, its Collateral, or any proceeds of its Collateral for the costs or expense of preserving or disposing of such Collateral under §506(c) of the Bankruptcy Code;

5.  Entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of §362 of the Bankruptcy Code to allow any creditor to execute upon, enforce or perfect a lien on any Collateral;

6.  The Debtor's failure to perform any of its obligations hereunder and such failure shall not have been cured within five days after receipt of written notice of such failure from the Lender; or

7.  Filing of any notice of appeal of an Order.

**E. Remedies Upon Default**

Upon the occurrence of an Event of Default (as defined hereunder):

8

1.    The Debtor's authority to use Cash Collateral shall immediately terminate and the Debtor shall not use any Cash Collateral unless the Lender provides its written consent to such use or the Bankruptcy Court issues an order authorizing such use.  The Lender agrees that the Debtor may seek a hearing on use of Cash Collateral upon 72 hours' notice to the Lender.

2.    The Lender shall have the right to seek relief by the Bankruptcy Court from the automatic stay of §362 of the Bankruptcy Code, motion for which may be heard on an expedited basis on not less than fifteen (15) days notice to the Debtor and its counsel, counsel for any Committee, and the U.S. Trustee.  (The foregoing is in addition to the Lender's general right to seek relief from such automatic stay under applicable provisions of the Code and the Rules, and the Lender has not waived its right to seek relief from the automatic stay under such provisions.)

3.    Provided that such relief from the automatic stay is granted, and only to the extent granted, the Lender may exercise all remedies available to it under the Loan Documents and applicable nonbankruptcy law.

**F.**    **Term**

1.    Effectiveness.  This Agreement shall become effective upon the date hereof, except that the authorization for the Debtor to use Cash Collateral shall not commence until entry of an interim Order by the Bankruptcy Court conforming to the terms of this Agreement.

2.    Expiration.  Unless sooner terminated due to the continuation of an uncured Event of Default, the Debtor's authority to use Cash Collateral shall expire on the earlier of:

    (a)  September 30, 2010, unless such date is extended by the written agreement of the parties to this Agreemnt;

    (b)  The effective date of a plan of reorganization confirmed in the Chapter 11 Case; or

9

(c) Immediately prior to the closing of a sale of all or substantially all of the Debtor's assets.

## G. **General Provisions**

1. **Notices.** Except as otherwise expressly provided herein, all notices and other communications provided for hereunder shall be in writing (including facsimile) and transmitted or delivered personally or by overnight courier, addressed to the applicable party as follows or at such other address or facsimile number as shall be designated by any party in a written notice to the other parties hereto transmitted or delivered as set forth in this section:

2. **Binding Effect.** This Agreement shall be binding upon the Lender and the Debtor and their respective successors and assigns (including any trustee hereafter appointed or elected as a representative for the estate of Debtor in the Chapter 11 Case or any subsequent Chapter 7 case) and shall inure to the benefit of the Lender and the Debtor (except with respect to any trustee hereafter appointed for the estate of Debtor in a case under Chapter 7 or Chapter 11 of the Bankruptcy Code) and their respective successors and assigns. Except as otherwise explicitly set forth in this Agreement or an Order, no third parties are intended to be or shall set forth in this Agreement or an Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of the provisions of this Agreement.

3. **No Waiver; Remedies Cumulative.** No failure or delay on the part of the Lender in exercising any right, power or privilege hereunder or under any other Loan Document and no course of dealing between the Debtor and the Lender shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder or under any other Loan Document preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder or thereunder. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies that the Lender would otherwise have.

10

4.   **Governing Law.**  Subject to applicable provisions of the Bankruptcy Code and the Rules, this Agreement and the other Loan Documents and the rights and obligations of the parties hereunder and thereunder shall be construed in accordance with and governed by the law of the State of California.

5.   **Counterparts; Facsimile Signatures.**  This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same agreement.  The signature of each of the parties' representatives may be transmitted to the others by facsimile, which shall have the same force and effect as if it were an original signature of such representative.

6.   **Headings Descriptive.**  The headings of the several sections and other portions of the Agreement are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Agreement.

7.   **Amendment or Waiver.**  Neither this Agreement nor any terms hereof or thereof may be changed, waived, discharged or terminated unless such change, waiver, discharge or termination is in writing signed by the party to be charged thereby.

8.   **Severability.**  Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

11

9. **Further Assurances.** Upon request by the other party, each party will take all reasonable actions, including the execution and delivery of additional documents and agreements, as are necessary or appropriate to carry out the intent of this Agreement.

IN WITNESS THEREOF, the undersigned parties hereby execute this Agreement as of the date set forth in the preamble hereto.

[SECURED LENDER]

_____        By:_____
Amaden Associates, LLC                        Name
Debtor in possession                          Title

APPROVED AS TO FORM:
The Law Office of Joel K. Belway          [CREDITOR'S COUNSEL]
Professional Corporation

_____        _____
Joel K. Belway                                Name
Attorney for Debtor in Possession             Attorney for
                                              Secured Lender

12